AO 102 (01/09)  Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br><br>A black Chrysler 300 Sedan, bearing Washington<br>license plate number SM00921, as further described<br>in Attachment A-3 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.   MJ23-130 |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of

___21___ U.S.C §§ ___841 & 846___ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location.  The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ property designed for use, intended for use, or used in committing a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A black Chrysler 300 Sedan, bearing Washington license plate number SM00921 and the property located at 3221 Meadow Avenue North, Renton, WA 98056, as further described in Attachment A-3

☑ Delayed notice of ___90___ days (give exact ending date if more than 30 days: ___08/04/2023___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means ☐ telephonically recorded.

*s/ Jonathan J. Dittoe*
*Applicant's signature*

Jonathan Dittoe, Task Force Officer, DEA
*Applicant's printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

*Judge's signature*

Date:   ___03/22/2023___

City and state:   ___Seattle, Washington___

Michelle L. Peterson, U.S. Magistrate Judge
*Printed name and title*

USAO#  2020R00998

**Attachment A-3**

**Description of Target Vehicle and Nature of Authorization for Tracking**

This warrant shall authorize agents with DEA and other law enforcement agents/officers/technicians working with them, to place an autonomous GPS tracking device on the Target Vehicle described below:

a.     **Target Vehicle 4 (TV4):**  A black Chrysler 300 Sedan, bearing Washington license plate number SM00921, registered to Blanca Lopez Rodriguez at 3221 Meadow Ave N, Renton, WA 98056.

Agents are authorized to:

a.     install, remove, monitor, repair, or adjust an electronic tracking device on or within the vehicle at any time of the day or night;

b.     if necessary to protect the safety of persons installing, removing, monitoring, repairing, or adjusting the electronic tracking device, or to protect the integrity of the investigation, surreptitiously enter the subject vehicle at any time of the day or night, and move the subject vehicle from one location to another for the purpose of installing, removing, monitoring, repairing, or adjusting the device;

c.     surreptitiously re-enter the subject vehicle at any time of the day or night, for the purpose of installing, removing, monitoring repairing, or adjusting the device;

d.     continuously monitor any and all signals emitted from the device, including when the vehicle enters any structure or private property in which there may be a reasonable expectation of privacy; and

e.     move one or more tracker back and forth between Target Vehicles during the authorized tracking period as surveillance suggests would be most productive, with "execution" of the warrant having been accomplished if at least one tracker is installed on one **Target Vehicle 4** within ten days of issuance of the warrant.

ATTACHMENT A-3 - page 1
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Private Property**

In addition to entering **Target Vehicle 4**, Agents may surreptitiously enter all driveways, roadways, parking areas (including any enclosed garage structure), and other places where **Target Vehicle 4** may be parked at the following locations, in order to access the above-described vehicle pursuant to the warrant, at any time of the day or night:

     a.  3221 Meadow Avenue North, Renton, WA 98056.

This authorization continues in any jurisdiction where **Target Vehicle 4** may move for a period not to exceed forty-five (45) days.

ATTACHMENT A-3 - page 2
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
SEARCH WARRANTS AND PEN-TRAP ORDERS**

STATE OF WASHINGTON    )

                        )     ss

COUNTY OF KING         )

    I, Jonathan Dittoe, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

    1.    I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the following two cellular telephones (collectively referred to as the "**Target Telephones**"):

        a.    A cellular telephone assigned call number 206-849-6553, with listed subscriber "Alex Soto" (hereinafter referred to as "**Target Telephone 9**" or "**TT9**"), and service provided by AT&T Wireless, a wireless service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Suite 600, FL 33408. **TT9** is described herein and in Attachment A-1, and the location information to be seized is described herein and in Attachment B.

        b.    A cellular telephone assigned call number 425-919-6467, with listed subscriber "Prepaid Customer" (hereinafter referred to a "**Target Telephone 10**" or "**TT10**"), and service provided by AT&T Wireless, a wireless service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, Suite 600, FL 33408. **TT10** is described herein and in Attachment A-2, and the location information to be seized is described herein and in Attachment B.

### ECPA

    2.    The Court has jurisdiction to issue the proposed warrants under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a

AFFIDAVIT OF TFO JON DITTOE - 1
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

Pen Register Act

3.　Because these warrants seek the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrants are designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

4.　The Court has jurisdiction to issue the requested pen-trap orders because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

5.　This application includes all the information required by the Pen Register Act. *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1). Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney C. Andrew Colasurdo that (1) identifies the Drug Enforcement Administration (DEA) as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by those agencies. 18 U.S.C. § 3122(b). The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

6.　A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

7.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers. The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act. Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the **Target Telephones** without geographic limit.

8.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrants that AT&T, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of these warrants furnish, upon service of the warrants, information, facilities, and technical assistance necessary to install the pen/traps, including installation and operation of the pen-traps unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the government, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

9.     **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

10.     I also make this affidavit in support of an Application to obtain a tracking warrant for the following vehicle:

a.     A black Chrysler 300 Sedan, bearing Washington license plate number SM00921, registered to Blanca Lopez Rodriguez at 3221 Meadow Avenue North, Renton, WA 98056, (hereinafter refererred to as "**Target Vehicle 4**" or **TV4**"), as described in Attachment A-3.

AFFIDAVIT OF TFO JON DITTOE - 3
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 21, of the United States Code, Sections 841 (distribution and possession with intent to distribute controlled substances) and 846 (attempt and conspiracy to commit the above controlled substances offenses) have been committed, are being committed, and will be committed by individuals using **TT9** (believed to be a person known only as El Gordo), and **TT10** and **TV4** (believed to be used by Humberto Lopez-Rodriguez). There is also probable cause to believe that members of the DTO are using multiple cellular phones and vehicles in furtherance of these crimes, including **TT9, TT10**, and **TV4** and that the whereabouts of **TT9, TT10,** and **TV4** over time, and the location information described in Attachment B, will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses. Obtaining the information sought in this Affidavit is necessary to further the investigation into these offenses.

## AGENT BACKGROUND

12.     I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

13.     I am currently employed by the Seattle Police Department (hereinafter SPD) and assigned to the Narcotics Section. I am deputized as a Task Force Officer with the Drug Enforcement Administration, United States Department of Justice, and have been so deputized by the DEA since October of 2005. In this capacity, I investigate violations of the Controlled Substance Act, 21 U.S.C. § 801 *et seq.*, and related offenses. I am currently assigned to the DEA Seattle Field Division. In 1993, I attended the 12-week Washington State Basic Law Enforcement Academy, a portion of which was devoted to narcotics enforcement. For several years I was assigned to proactive street patrol focusing on narcotics enforcement, both in uniform and in plain clothes. I have attended trainings

AFFIDAVIT OF TFO JON DITTOE - 4
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

courses related to drug investigations through the DEA and SPD, including undercover operations, confidential informants, financial investigations, money laundering, and telecommunications exploitation and surveillance. I have participated in, and conducted hundreds of narcotics arrests, ranging from street level dealers to major drug traffickers.

14.    During my career, I have investigated numerous types of criminal offenses, including those involved in the current investigation. These investigations have included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses. These investigations have utilized the following investigative techniques: the use of informants, undercover agents, the analysis of pen register, trap and trace, and toll records, physical surveillance, and the execution of search warrants. I have planned, participated in, and supervised the execution of dozens of search warrants authorizing the search of locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, and vehicles.

15.    I have also been an affiant on multiple federal wiretap affidavits, have testified in grand jury proceedings, and have written investigative reports. These investigations resulted in numerous state and federal prosecutions of persons who have possessed, imported, or distributed controlled substances, as well as the seizure of illegal drugs and the proceeds from the sale of those drugs. As part of my experience with wiretaps, I have monitored, listened to, reviewed transcripts and line sheets (prepared by linguists) documenting the content of hundreds of intercepted conversations involving the trafficking of cocaine, methamphetamine, heroin, fentanyl analogues, marijuana, and other narcotics, by persons who used some form of code to thwart law enforcement. I also have interviewed defendants at the time of their arrest and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer and

AFFIDAVIT OF TFO JON DITTOE - 5
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

safety valve interviews who were experienced in speaking in coded conversation over the telephone. In many instances, I was able to speak with these drug traffickers about specific conversations in which they were intercepted pursuant to electronic surveillance. From these interviews, and from discussions with other experienced agents, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of firearms to protect their narcotics related activities and of cellular telephones, pagers, and personal digital assistants to facilitate communications while avoiding law enforcement scrutiny.

16.    By virtue of my training and experience, and my interactions with other experienced agents who conduct drug investigations, I am familiar with the methods used by drug traffickers to: (1) import, transport, store, safeguard, and distribute drugs; (2) collect, transport, store, safeguard, remit, and/or launder drug proceeds; (3) obtain and utilize telephones, pagers, computers, and other devices in order to communicate with each other, as well as the jargon and/or codes commonly used when they refer to drugs and/or drug proceeds. I also have examined documentation of various methods in which illicit drugs are smuggled, transported, and distributed. I have had discussions with other law enforcement officers and cooperating individuals about the packaging and preparation of narcotics, methods of operation, and security measures that are often employed by narcotics traffickers. As a result of my experience, I have become familiar with the day to day operations and the various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to manufacture, possess, import, conceal, package, use, and distribute controlled substances.

17.    This is the first application in this judicial district for a tracking warrant and pen trap order for **TT9** and **TT10**. Similarly, this is the first application for a tracking warrant for **TV4** in this judicial district.

//

//

AFFIDAVIT OF TFO JON DITTOE - 6
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**

18.     Based upon my experience and training as well as conversations I have had with other agents and law enforcement officers who specialize in narcotics investigations, including investigations into the laundering of narcotics trafficking proceeds, and I am familiar with the methods, tactics, and techniques utilized by narcotics trafficking/money laundering organizations. I have spoken with federal agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. Through my conversations with these agents and other law enforcement officers, I am knowledgeable in the methods and modes of narcotics trafficking/money laundering operations.

19.     Based on my training and experience, I know narcotics traffickers often require the use of one or more communication facilities to negotiate times, places, schemes, and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. I know international and domestic narcotics trafficking organizations often depend on maintaining timely long-distance and local connections between original sources of supply and those down the organizational chain. Narcotics traffickers utilize a variety of communication methods, including telephone communications, encrypted messaging applications, and email. I also know narcotics traffickers often use fraudulent information to subscribe to communication facilities, and frequently change communication facilities to thwart law enforcement efforts to intercept their communications.

20.     Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because they can be purchased without the location and personal

information that land lines require. They can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. They can also be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes.

21.    In my experience, GPS location data garnered from either cellular GPS ping warrants or vehicle tracking warrants has yielded information that is relevant and material to drug trafficking investigations. Such information includes, but is not limited to: (1) the identities of suspected suppliers, customers, and other potential conspirators who assist in the distribution of controlled substances; (2) the location of meetings between conspiratorsand "stash" houses where illicit substances are stored; (3) the locations used by the targetsfor drug distribution; (4) the locations of money transfer businesses used by members ofthe operation to launder proceeds of drug trafficking activities or through which money isexchanged with co-conspirators; (5) the geographical breadth of the suspected drugtrafficking; and (6) the identity of co-conspirators, potential organizers, leaders, managers,or supervisors of the suspected trafficking and distributionorganizations, by examining thetransportation patterns and utilizing surveillance to identify all the potential targets.

22.    Additionally, based upon my training and experience, one way to identify co-conspirators is to covertly follow suspect vehicles known to be utilized in furtherance of drug trafficking offenses with the aid of electronic tracking devices, and then to conductan investigation concerning those names and addresses identified through surveillance. Based upon electronic tracking device data, I would then direct other investigators to conduct surveillance at the addresses and determine if criminal activity was

AFFIDAVIT OF TFO JON DITTOE - 8
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

occurring there, which in turn could yield potential names and conspirators, and potential drug storage locations used by the organization. Obtaining this electronic tracking device data for **TV4** is critical to accurately identify co-conspirators and locations

23.    I have participated in the ongoing investigation, only a portion of which is described in this affidavit, since Fall 2020. During that time, I have obtained the facts set forth in this affidavit through personal participation in the investigation described below, from oral and written reports of other law enforcement officers, from records, documents and other evidence obtained during this investigation, and from confidential sources and sources of information who are associated with, and knowledgeable about, the subjects of this investigation and their confederates. I have obtained and read official reports prepared by various law enforcement officers participating in this investigation and in the other related investigations by agencies referenced in this affidavit.

24.    Since this affidavit is submitted for the limited purpose of securing authorization for a tracking warrant and pen trap order for **TT9** and **TT10**, and a tracking warrant for **TV4**, I have not included every fact known concerning this investigation. I have set forth the facts that I believe are necessary for a fair determination of probable cause for the requested search/tracking warrants.

## **PROBABLE CAUSE**

### **Ongoing Investigation**

25.    This purpose of this affidavit is in support of an ongoing investigation into a Drug Trafficking Organization (DTO) involved in a conspiracy to import and distribute illegal narcotics, including methamphetamine, heroin, fentanyl and cocaine, from Mexico into the United States, specifically the Western District of Washington. During the ongoing investigation of this DTO, investigators have utilized telephone tracking, pen registers, and vehicle tracking to acquire and assist in the acquisition of evidence of this ongoing conspiracy. These techniques and the aforementioned acquired evidence have been utilized in probable cause determinations by Magistrate Judges for the Western District of

AFFIDAVIT OF TFO JON DITTOE - 9
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington and the granting of search warrants, the executions of which have resulted in the seizure of illegal narcotics, as well as U.S. Currency believed to be the proceeds of narcotics.

26.    This affidavit seeks the authority for the described electronic surveillance techniques on **Target Telephones 9 and 10**, described above, and **Target Vehicle 4**, a black Chrysler 300 sedan bearing Washington license plate SM00921registered to Blanca Lopez Rodriguez at 3221 Meadow Avenue North, Renton, WA 98056.

**Use of Confidential Source**

27.    This investigation has utilized various investigative techniques including the use of confidential sources of information, specifically Confidential Cource 1 (hereinafter "CS1").

28.    CS1 was previously a target of this investigation. Specifically, in late 2020, investigators surveilled CS1 at money pick-ups. In early 2021, investigators observed CS1 conduct at least one suspected controlled substance transaction. Prior to enforcement action against CS1, CS1 approached law enforcement to provide information regarding the ISLAS-BUCIO Drug Trafficking Organization (DTO). CS1 admitted to previously being involved in drug trafficking activities with the ISLAS-BUCIO DTO. CS1 has no criminal history. CS1 understands that he/she must provide only truthful information to law enforcement investigators. To my knowledge, CS1 has not provided false information during this, or in other investigations. CS1 has been paid in this investigation both when he/she has provided information and when he/she has engaged in undercover operations at the direction of law enforcement. CS1 is also receiving immigration benefits including deferred action and work authorization.

29.    CS1 lives in the community and has close ties to some members of the DTO and, therefore, wishes to remain anonymous for fear of reprisals and retribution. However, CS1 has expressed a willingness to testify if his/her identity could be protected.

AFFIDAVIT OF TFO JON DITTOE - 10
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

30.   CS1 has also provided general information about the quantities of drugs transported by the DTO, how they are transported, and how illicit proceeds are handled. Some of this information was already known to investigators, and other information has been independently corroborated by investigators. CS1 has also participated in multiple controlled purchases as part of this investigation.

**Use of TT9, TT0 and TV4 During Controlled Purchase in March 2023**

31.   As described in detail below, investigators conducted a controlled purchase of heroin and cocaine from an individual known as "El Gordo." The narcotics were delivered by a "runner" identified as Humberto Lopez-Rodriguez who arrived in **TV4**. CS1 arranged the controlled purchase of narcotics via phone contact with El Gordo over **TT9**. Based upon telephone toll analysis of **TT9**, investigators identified **TT10** as the telephone utilized by Humberto Lopez-Rodriguez. Based upon my analysis of the telephone contact between **TT9** and **TT10** during the controlled delivery, as described in detail below, I believe there is probable cause to believe that the delivery of narcotics to CS1 was arranged by El Gordo, using **TT9** to communicate with Humberto Lopez-Rodriguez utilizing **TT10**.

32.   In late February 2023, CS1 provided investigators with information regarding an individual known as El Gordo. El Gordo remains unidentified. CS1 stated that El Gordo was sent to Washington by associates of the DTO, but that El Gordo had a falling out with the DTO. It is unknown if El Gordo has current information regarding the DTO's operations. However, CS1 stated that El Gordo recently was offering a variety of narcotics for sale. CS1 stated that El Gordo was associated with a tire store in Burien, Washington, and lived at a specified apartment complex in Renton, Washington. CS1 provided 206-849-6553 (**TT9**) as a telephone number utilized by El Gordo for contact to obtain narcotics.

33.   In early March 2023, at the instructions of investigators, CS1 initiated conversations with El Gordo for the purpose of conducting a controlled purchase of narcotics. Investigators met with CS1 and instructed CS1 to place a phone call to El Gordo over **TT9**. This phone call was live-monitored, recorded, and investigators confirmed the

destination number (**TT9**). During the conversation, El Gordo told CS1 that he (El Gordo) had cocaine and heroin. CS1 requested that El Gordo deliver multiple ounces of heroin the following day. CS1 and El Gordo also agreed upon a price per ounce of heroin.

34.    The following day, in early March 2023, at approximately 6:30 p.m., CS1 met with investigators to conduct the controlled purchase planned with El Gordo. CS1's person and his/her vehicle were searched and found to be clear of contraband and unauthorized items. CS1 was provided with DEA buy funds to conduct the controlled purchase. CS1 was subsequently maintained under surveillance and control until the conclusion of the operation.

35.    At the instruction of investigators, CS1 placed a monitored and recorded phone call to **TT9** in order to finalize the drug transaction with El Gordo. According to telephone toll records, this call occurred at 6:38 p.m. [1] Investigators confirmed the destination number for the phone call (**TT9**). During the phone call, El Gordo told CS1 that he (El Gordo) would send a third party ("runner") to meet with CS1. El Gordo stated he would contact the runner to see what time the runner could meet CS1. As instructed by investigators, CS1 provided El Gordo with a meeting location to conduct the transaction. During these preliminary conversations, CS1 also requested an ounce of cocaine from El Gordo pursuant to investigators' instructions.

36.    According to toll records, at 6:40 p.m., immediately after the phone conversation with CS1, **TT9** (El Gordo) placed a phone call to 425-919-6467 (**TT10**). This phone contact was less than one minute in duration and may not have been completed. At 6:45 p.m., **TT10** placed a return outgoing call to **TT9**, which lasted over one minute, and based upon its duration appeared to be a connected phone conversation. Immediately after the phone contact between **TT9** and **TT10**, El Gordo (**TT9**) utilized a messaging application to advise CS1 that the runner would be available at 8:00 p.m. El Gordo aslo

---

[1] Subsequent to this transaction, investigators obtained via subpoena, telephone toll records and subscriber information for **TT9** and **TT10**.

provided a price that reflected the total price for three ounces of heroin and an ounce of cocaine. CS1 received these messages at 6:47 p.m. Based on this exchange I believe that El Gordo utilized **TT9** to contact **TT10** to find out when the runner would be available to meet CS1.

37.    Subsequently, there was no additional toll records for **TT9** until 8:01 p.m., when **TT9** (El Gordo) sent a series of texts and a made brief phone call to **TT10** within one minute of each other. At 8:02 p.m., **TT9** (El Gordo) immediately placed a phone call to CS1. At the time, CS1 was in place at the pre-arranged meeting location and the phone call was monitored by agents over a mobile transmitter. Immediately thereafter, CS1 reported to investigators that s/he had informed El Gordo that s/he was present at the meeting location and that El Gordo had reported that the runner was delayed, but was enroute to the meeting location. Based upon this exchange, I believe that El Gordo utilized **TT9** to contact **TT10** to ascertain the runner's status and subsequently reported this information to CS1.

38.    Approximately twenty minutes later, at 8:19 p.m., **TT9** (El Gordo) received an incoming call from **TT10** (the runner) that lasted approximately six minutes. At 8:31 p.m., **TT9** (El Gordo) sent a message to CS1 advising that it would be ten more minutes before the runner arrived. Based upon this exchange, I believe that El Gordo (**TT9**) had received an update on the runner's status via a phone conversation with the runner (using **TT0**), and relayed that information to CS1.

39.    Approximately 10 minutes later, at 8:40 p.m., **TT9** (El Gordo) placed a brief phone call to **TT10** (the runner), and immediately thereafter placed a brief phone call to CS1. During this phone call, El Gordo (**TT9**) informed CS1 that the runner would be arriving in a black Chrysler 300. At approximately the same time, toll records show that **TT10** (the runner) was placing a call to **TT9** (El Gordo). Within two minutes of this phone call, **TT9** (El Gordo) placed another phone call to **TT10** (the runner). Based upon this exchange, I believe that **TT9** (El Gordo) and **TT10** (the runner) were in contact with each

other to confirm that the runner had arrived at the agreed upon meeting location, as well as to confirm the vehicle the runner was driving, and arrange the meeting with CS1.

40.    At approximately the same time these phone calls were taking place, surveillance observed a black Chrysler 300 (**TV4**)[2] arrive at the pre-arranged meeting location and park near CS1. CS1 then exited her/his vehicle and entered the passenger side of **TV4**. After a brief time inside **TV4,** CS1 returned to his/her vehicle.

41.    CS1 was subsequently debriefed by investigators. CS1 confirmed that the individual inside **TV4** was El Gordo's runner. CS1 stated that the runner provided CS1 with a quantity of heroin and cocaine consistent with the agreement CS1 made with El Gordo, in exchange for the previously described official buy funds. Investigators obtained the multiple ounces of heroin and cocaine and remaining buy funds from CS1 which were consistent with investigators instructions and the phone conversations with El Gordo.

42.    Meanwhile, investigators followed **TV4** from the meeting location directly to **TV4**'s registered address (3221 Meadow Ave N, Renton, WA 98056), a single family residence (not apartment) in Renton, Washington. The driver of **TV4** was observed walking from the vehicle and entering the front door of the residence. Investigators subsequently obtained, from investigation of **TV4** and the Renton residence, a Washington Driver's License photograph of a male, matching the description of the driver/runner. CS1 identified this individual (Humberto Lopez Rodriguez) from the photograph as the driver/runner of **TV4**.

43.    Telephone records subpoenaed from AT&T revealed that **TT10** was activated on February 22, 2023. **TT9** was in contact with **TT10** 34 times from February 22, 2023 through March 7, 2023. A search of a public database revealed that the area code and prefix of **TT10** corresponds to telephone numbers assigned to Renton, Washington.

---

[2] **TV4** was identified as bearing Washington license SM00921, a black Chrysler 300 sedan registered to Blanca Lopez Rodriguez at 3221 Meadow Ave N, Renton, WA 98056.

AFFIDAVIT OF TFO JON DITTOE - 14
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**TT10** is a prepaid telephone, and it appears based upon the subpoena response from AT&T that no identifiable information was provided to AT&T from the phone user/subscriber.

44.     Based upon the information contained herein, together with my training and experience it is my belief that **TT9** and **TT10** are being utilized by El Gordo and Humberto Lopez Rodriguez, respectively, in an ongoing conspiracy to traffic narcotics. Additionally, it is my belief that **TV4** is also being utilized by Humberto Lopez Rodriguez to traffic narcotics in furtherance of the conspiracy. The requested tracking authorizations for **TT9**, **TT10** and **TV4**, and pen register trap/trace for **TT9** and **TT10**, will further this investigation by assisting investigators in: identifying locations, vehicles, facilities, and additional co-conspirators being utilized in this ongoing conspiracy; as well as seizing narcotics, narcotics proceeds and other evidence of this ongoing conspiracy.

## KNOWLEDGE OF CELL PHONE PROVIDERS

45.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.

46.     Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers -- as transmitted from a cell phone to a cellular antenna or

tower -- are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

47.     Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

48.     Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network. When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

49.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating

AFFIDAVIT OF TFO JON DITTOE - 16
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the cell towers (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

50.    Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of **TT9** and **TT10**, including by initiating a signal to determine the location of **TT9** and **TT10**, on AT&T's networks or with such other reference points as may be reasonably available.

51.    When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application-initiated data transfers, among other things.

52.    Based on my training and experience, I know that AT&T can collect cell-site data about **TT9** and **TT10**. Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers, such as AT&T, typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

AFFIDAVIT OF TFO JON DITTOE - 17
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

53.     Different service providers use different systems, applications, and reports to collect or analyze cell site data. These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint PCS), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE, Timing Advance, and TruCall. RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

54.     Based on my training and experience, I know that wireless providers, such as AT&T, typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such, as AT&T, typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **TT9** and **TT10** user(s) and may assist in the identification of co-conspirators.

55.     Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone. These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone. To provide for any such changes made to **TT9** and **TT10**, Attachments A-1 and A-2 specify that the property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30

AFFIDAVIT OF TFO JON DITTOE - 18
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

### AUTHORIZATION REQUEST FOR TARGET TELEPHONES 9 AND 10

56.    Based on the foregoing, I request that the Court issue the proposed search warrants and pen-trap orders, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and 18 U.S.C. § 3123.

57.    I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B, unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of **TT9** and **TT10** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

58.    Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on AT&T. Because the warrant will be served on AT&T, who will then compile the requested records and data, reasonable cause exists to permit the

AFFIDAVIT OF TFO JON DITTOE - 19
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

execution of the requested warrant at any time in the day or night. I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **TT9** and **TT10** outside of daytime hours.

## AUTHORIZATION REQUEST FOR TARGET VEHICLE 4

59.     Based on the foregoing, I respectfully submit there is probable cause to believe that Humberto Lopez-Rodriguez is using **TV4** in furtherance of drug trafficking, including violations of Title 21 of the United States Code. Installing a tracking device and obtaining real time GPS tracking data on the location of the **TV4** is necessary and appropriate to aid the investigation of this drug trafficking organization. This Application is part of an ongoing investigation into a drug trafficking organization with associates both known and unknown. "Real time" GPS data on the **TV4** used by Humberto Lopez-Rodriguez would assist investigators in identifying El Gordo and Humberto Lopez-Rodriguez's associates, their residences, and possibly any stash location used by El Gordo and Humberto Lopez-Rodriguez. Investigators would be able to easily locate **TV4** in order to conduct surveillance of **TV4**, which could lead to identifying other co-conspirators and/or sources of supply. Accordingly, there is probable cause to believe that tracking this vehicle will reveal evidence, fruits, and instrumentalities of Title 21, United States Code, Sections 841 and 846.

60.     I respectfully request that the Court issue a warrant authorizing members of the DEA, or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on **TV4** within the Western District of Washington within 10 days of the issuance of the requested warrant, and to remove said tracking device from **TV4** after the use of tracking devices has ended; to surreptitiously enter the property located at 3221 Meadow Avenue North, Renton,Washington 98056, where the **TV4** may be parked, and/or move **TV4** to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device, for a period of 45 days following

AFFIDAVIT OF TFO JON DITTOE - 20
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Western District of Washington.

61.    I further request that the Court authorize execution of the warrant (i.e., installation, monitoring, and removal) at any time of day or night, owing to the potential need to locate **TV4** outside of daytime hours.

## REQUEST FOR DELAYED NOTICE

62.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice to the subscriber/registered owner or user of **TT9, TT10**, and **TV4** until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber/registered owner or user of **TT9, TT10**, and **TV4** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).

63.    Furthermore, with respect to **TT9** and **TT10**, as further specified in Attachment B, which are incorporated into the warrants, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

## REQUEST FOR SEALING

I further request that the Court order that all papers in support of this Application, including the Affidavit, Search Warrants, and Pen/Trap Orders, and all related documents,

AFFIDAVIT OF TFO JON DITTOE - 21
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.


_s/ Jonathan J. Dittoe_
JONATHAN DITTOE, DEA
Task Force Officer


The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the 22nd day of March, 2023.


MICHELLE L. PETERSON
United States Magistrate Judge

AFFIDAVIT OF TFO JON DITTOE - 22
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**EXHIBIT 1**

2

<u>DECLARATION</u>

3

I, C. Andrew Colasurdo, declare as follows:

4

1.    I am a duly appointed Assistant United States Attorney for the Western

5

District of Washington, and I have primary responsibility for representing the interests of

6

the United States herein.

7

2.    I make this declaration in support of an Application for search warrants

8

pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an

9

integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123. Pursuant to 18 U.S.C.

10

§ 3122(a)(1), I am the applicant for purposes of the pen-trap portion of the requested

11

warrant and order.

12

3.    Pursuant to 18 U.S.C. § 3122(b), I certify that DEA is the law enforcement

13

agency conducting the investigation in this matter and that the information likely to be

14

obtained from the requested warrant is relevant to an ongoing criminal investigation being

15

conducted by those agencies.

16

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

17

Application is made on the basis of information officially furnished, and on that basis I

18

verily believe such information to be true.

19

Executed this 22nd day of March, 2023.

20

21

*s/ C. Andrew Colasurdo*
C. ANDREW COLASURDO
Assistant United States Attorney

22

23

24

25

26

27

EXHIBIT 1 - 1
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970